TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0035-KB

KENTUCKY BAR ASSOCIATION                                    MOVANT


V.                              IN SUPREME COURT


MICHAEL LEE MEYER                                    RESPONDENT


### OPINION AND ORDER

Michael Lee Meyer, whose bar roster address is 12535 Stoneway Court, Davie, FL 33330, KBA Member Number 86878, was admitted to the practice of law in the Commonwealth of Kentucky on October 24, 1997. On October 22, 2021, the Indiana Supreme Court entered an order accepting Meyer's resignation from the Indiana Bar and prohibiting him from seeking reinstatement for five years. Thereafter, the Kentucky Bar Association (KBA) filed a petition with this Court asking that we impose reciprocal discipline pursuant to SCR 3.435. We ordered Meyer to show cause why we should not impose such discipline, and he agreed to the imposition of the reciprocal discipline. Accordingly, this Court hereby suspends Meyer from the practice of law for five years, as consistent with the order of the Indiana Supreme Court.

# I. BACKGROUND

Beginning in approximately 1999, Meyer marketed a "Plan" to take advantage of charitable giving deductions. The Plan was marketed to financial planners and certified public accountants. The financial planners and certified public accountants would refer clients to Meyer to participate in the Plan. Pursuant to the Plan, Meyer would create a partnership or a limited liability company ("entity") for the client. The majority of the entities were established in Indiana.

After the creation of the entity, Meyer would assist his client in transferring property to the entity. If the property needed to be valued, Meyer would appraise the property himself and provide the appraisal to his clients for tax purposes. He would then draft documents to effectuate a transfer of a non-management interest of the entity to a charity. The client would remain as the manager of the entity. The charity would then generate a donation letter to the client acknowledging the value of the transferred interest in the entity as donated property. Because the interest in the entity was donated to a charity, Meyer instructed his clients that they were entitled to a charitable deduction on their taxes. He further counseled the clients of the Plan to make annual distributions to the charities in the form of interest in the entity.

Meyer directed most of his clients to donate an interest in the entity to specific Indiana charities. Meyer also represented the Indiana charities to which he directed his clients to donate. Meyer drafted the paperwork necessary for the charities' incorporation and 501(c)(3) status and provided bookkeeping,

tax, and record keeping services to the charities. Meyer also held varying degrees of direct or indirect control over the charities, including serving as a Director for the different charities at various points in time. When Meyer was not a Director of the charities, the Directors were often people close to him, including his parents.

On Meyer's advice and direction, one of the charities loaned one of Meyer's clients the value of the property that client's entity had donated to the charity. The loan occurred shortly after the transfer of the interest in the entity to the charity. Based on tax filing forms, it appears that the charities may have made other loans as well.

The charities listed no staff despite allegedly taking in a substantial amount of money and property, as well as making millions of distributions each year. In some instances, the charities made distributions to each other. As a result of actions taken by the Internal Revenue Service (IRS), all of the charities associated with Meyer and the Plan have retroactively lost their 501(c)(3) status and have since been dissolved. Meyer represented the charities in the IRS actions against them.

Under the Plan, Meyer let clients choose between paying him a flat fee or paying him a percentage of the value of the property as compensation for his work. He also charged his clients an annual maintenance fee. For this annual compensation, Meyer prepared necessary entity paperwork and agreed to represent the client should the IRS question the validity of the client's charitable deductions under the Plan.

3

The referring financial planners and certified public accountants also received compensation from the charity if the person referred to Meyer became a client of the Plan. The amount of money received by the referrer was a percentage of the value of the property the client placed in the Plan. Meyer determined the percentage the referrer would receive. The payments ranged from thousands to hundreds of thousands of dollars. Tax documents for one of the charities indicated that one referrer received $102,500, which was over fifteen percent (15%) of the value of the property placed in the plan by the participants referred by that referrer. Another referrer received $6,000, which was approximately thirty percent (30%) of the value of the property placed in the plan by the participants referred by that referrer. The charities listed the money paid to referrers as professional fundraising expenses on documents filed with the IRS.

On April 3, 2018, the United States Department of Justice (DOJ) filed an action against Meyer in the United States District Court for the Southern District of Florida, seeking to permanently enjoin Meyer from operating the Plan. The DOJ alleged that the Plan was illegal for multiple reasons, including that the clients actually retained control of the property; the property was not actually transferred to the new entity; the property supposedly transferred to the charities was non-existent; Meyer used backdated documents to allow his clients to take charitable deductions in years for which the clients were not eligible to take the deductions; the charities Meyer used were not legitimate charities; and Meyer misled plan participants regarding his credentials. The

4

DOJ estimated that the United States was deprived of more than $32 million in revenue from Meyer's Plan.

Meyer and the DOJ reached a settlement. Although he did not admit to any wrongdoing, Meyer agreed to a permanent injunction that barred him from being involved in any tax matter, plan, or representation. This injunction was entered on April 26, 2019.

The above-described facts resulted in an Inquiry Commission Complaint before the Kentucky Bar Association in KBA File 18-DIS-0095. An Indiana attorney disciplinary proceeding was also initiated based on the same set of facts. The Kentucky disciplinary proceeding was held in abeyance by the Inquiry Commission, pending the outcome of the Indiana disciplinary proceedings.

The Indiana Disciplinary Complaint alleged Meyer committed the following rules violations:

1. Meyer violated Rule 1.7(a) concerning conflicts of interest by concurrently representing Plan participants/clients and the charities and by tying the compensation due to Meyer to the amount a client contributed to the Plan.

2. Meyer violated Rule 1.8(c) concerning conflicts of interest by directing clients to donate to charities controlled by Meyer and/or his family members.

3. Meyer violated Rule 8.4(d) by implementing the Plan which caused "significant litigation on multiple levels."

Indiana Rule 1.7(a) is similar to Kentucky's Supreme Court Rule (SCR) 3.130(1.7)(a),[1] and Indiana Rule 1.8(c) is similar to SCR 3.130(1.8)(c).[2] Indiana Rule 8.4(d), which prohibits attorneys from "engag[ing] in conduct that is prejudicial to the administration of justice," does not have a direct corollary in the Kentucky Rules of Professional Conduct.

On September 24, 2021, Meyer tendered an Affidavit of Resignation to the Indiana Supreme Court. In his affidavit, Meyer acknowledged the material facts contained in the Indiana Disciplinary Complaint and admitted that if he was prosecuted, he could not successfully defend himself. The Indiana Supreme Court accepted Meyer's resignation and ordered that he is ineligible to petition for reinstatement to the practice of law for five years.

The equivalent reciprocal discipline in Kentucky is a five-year suspension. The KBA petitions this Court to impose said reciprocal discipline. Meyer agrees to the five-year suspension from the practice of law in Kentucky.

---

[1] SCR 3.130(1.7) prohibits a lawyer from "represent[ing] a client if the representation involves a concurrent conflict of interest," subject to some exceptions.

A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

SCR 1.130(1.7)(a).

[2] SCR 3.130(1.8)(c) prohibits a lawyer from "solicit[ing] any substantial gift from a client, including a testamentary gift, or prepar[ing] on behalf of a client an instrument giving the lawyer or a person related to the lawyer any substantial gift unless the lawyer or other recipient of the gift is related to the client."

The KBA also requests this Court to direct the Inquiry Commission to dismiss, as moot, the underlying Kentucky disciplinary proceeding, KBA File 18-DIS-0095.

## II. ANALYSIS

When this Court is presented with an attorney facing disciplinary action in another jurisdiction, the Court must decide whether identical reciprocal discipline is warranted here in the Commonwealth. This Court "shall impose the identical discipline unless Respondent proves by substantial evidence: (a) a lack of jurisdiction or fraud in the out-of-state disciplinary proceeding, or (b) that misconduct established warrants substantially different discipline in this state." SCR 3.435(4). Without such "substantial evidence," "a final adjudication in another jurisdiction that an attorney has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this State." SCR 3.435(4)(c).

In the case before us, Meyer has failed to provide any evidence showing a lack of jurisdiction or fraud in the Indiana proceedings, or any reason our Court should impose a lesser discipline upon him. He has agreed to the imposition of the reciprocal discipline. As such, we shall follow the Rules of this Court and impose equivalent discipline.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. Michael Lee Meyer is suspended from the practice of law for five years;

2. If he has not already done so, pursuant to SCR 3.390, Meyer shall promptly take all reasonable steps to protect the interests of his clients,

including, within ten days after the issuance of this order, notifying by letter all clients of his inability to represent them and of the necessity and urgency of promptly retaining new counsel and notifying all courts or other tribunals in which Meyer has matters pending. Meyer shall simultaneously provide a copy of all such letters to the Office of Bar Counsel;

3. If he has not already done so, pursuant to SCR 3.390, Meyer shall immediately cancel any pending advertisements, shall terminate any advertising activity for the duration of the term of suspension, and shall not allow his name to be used by a law firm in any manner until he is reinstated;

4. Pursuant to SCR 3.390, Meyer shall not, during the term of suspension and until reinstatement, accept new clients or collect unearned fees;

5. In accordance with SCR 3.450, Meyer shall pay all costs associated with these disciplinary proceedings against him, and for which execution may issue from this Court upon finality of this Opinion and Order; and

6. The Inquiry Commission shall dismiss as moot KBA File 18-DIS-0095.

All sitting. All concur.

ENTERED: March 24, 2022.

_____
CHIEF JUSTICE MINTON

8